J-S54007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JONATHAN LANDRON | |
| Appellant | No. 1855 MDA 2013 |

Appeal from the Judgment of Sentence September 19, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000559-2013

BEFORE:  LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.                **FILED SEPTEMBER 16, 2014**

Jonathan Landron appeals from the judgment of sentence entered September 19, 2013, in the Court of Common Pleas of Berks County, following a bench trial in which Landron was found guilty of robbery,[1] burglary,[2] theft by unlawful taking,[3] criminal trespass,[4] and criminal conspiracy.[5]  After careful review, we affirm.

The trial court summarized the facts as follows:

_____

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 3502(a)(1).

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 3503(a)(1)(i).

[5] 18 Pa.C.S. § 903(a)(1).

[Landron] and Alexander Cruz-Cintron, of Reading, Pennsylvania, were looking for "someone to burn"—that is someone "to rip off [or] steal from." In November 2012, Cruz approached his longtime friend, Danielle Mojica, and suggested that she could help them "burn" Raymond Hiester. Cruz knew that Hiester and Mojica sometimes smoked marijuana together and that Hiester bought cigarettes from Mojica, gave her money, and had promised to buy her a tablet. Mojica at first told Cruz and [Landron] she didn't want to steal from Hiester—she worried that doing so would jeopardize his willingness to buy her a tablet.

A few days after Cruz first proposed the idea, he and [Landron] again raised the idea of stealing from Hiester. Mojica again said she was not interested. But on November 26, 2012, Mojica learned that the plans to victimize Hiester were already in motion. [Landron] and Cruz showed Mojica a black handgun which, she was told, would only be used to scare Hiester—it "wasn't to be fired or anything like that." Two days later, four individuals from New York—a Hispanic female known as "Kay-Kay" and three males, one black and two Hispanic—arrived in Reading to assist in the operation.

On the morning of November 28, Mojica received a phone call. On the other end of the line she could hear [Landron], Cruz, and Kay-Kay, who informed her that the plan was going forward but assured her nothing "serious" was going to happen. They picked Mojica up and brought her back to Cruz and [Landron's] residence at 1230 Spring Street in Reading. Cruz and Kay-Kay persuaded Mojica to call Hiester and arrange to go to his house, while [Landron] continued to assure Mojica that "everything was going to be fine."

Mojica made contact with Hiester around 11:00 a.m. She sent him a series of text messages trying to persuade him to allow her to come over. . . . Hiester said it was not a good time, but Mojica persisted, and Hiester agreed to allow her to come to his house.

After Mojica made plans with Hiester, Kay-Kay drove her to Hiester's house, located in the 500 block of South 18th Street in Reading. Kay-Kay left, and Mojica went inside,

where she and Hiester began smoking marijuana and talking. After a few minutes, Mojica told Hiester that she had left her cigarettes in the car she arrived in, and that she also wanted to smoke more marijuana. Hiester went out to purchase some cigarettes and blunt paper from a corner store nearby. Hiester left through the back door, and Mojica remained at the house.

As soon as Hiester left, Mojica called Cruz to let him know that Hiester was gone, just as the three men from New York arrived at Hiester's home in [Landron's] car—a gold Mercedes sedan. After entering the home through the front door, they began looking for items to steal. They grabbed Mojica, taped her to a chair, and placed tape over her mouth. Hiester soon returned to his home, re-entering through the back door. He was met in the kitchen by a black male who was holding a black-and-silver handgun. The gunman told Hiester to "get on the ground" as soon as he walked into the room. Hiester hesitated, and the gunman approached him, put the gun to his chest and tried to push him to the ground. Hiester resisted, and the gunman shot him in the chest.

Hiester did not lose consciousness but attempted to use the phone in the kitchen to call 9-1-1. Meanwhile, the gunman resumed digging through the contents of Hiester's desk. At that time[,] Hiester also became aware of a second male in the home, who was descending the stairs from the second floor while trying to fend off an attack by Hiester's Rottweiler. Fearing that the gunman would shoot the dog—or shoot Hiester again—Hiester called off the dog and rushed out the back door to seek help.

Hiester found a neighbor and told him he had been shot by unknown individuals who were attempting to rob him inside his house. He then lay down in front of the neighbor's house to wait for the ambulance. While he was waiting for the ambulance, he saw the two males run out the front door of his house, enter a "small silver car," and drive away. Police and emergency medical personnel arrived thereafter, where they found Hiester outside. Hiester was taken to the hospital to receive treatment for his gunshot wound. He was released from the hospital after only six hours.

Hiester's neighbor untied Mojica from the kitchen chair, and she was questioned throughout the day by police. Afterwards, Mojica sought out [Landron] and Cruz. Cruz returned Mojica's phone, which had been taken while she was tied up at Hiester's house. [Landron] and Cruz questioned Mojica about her statements to the police, but after she assured them they had not been implicated, they went to dinner together and then went bowling.

After Hiester was discharged from the hospital, he began to develop fluid buildup in his chest, which had to be drained. Surgery was required around the area of the bullet hole, while a pump drained fluid from the area. Hiester, a roofing and home improvement contractor, returned to work after about three weeks of recovery. Hiester discovered that an iPod Touch, a new Samsung Galaxy II cell phone, and approximately 3 ounces of marijuana had been taken from his home.

Trial Court Opinion, 3/21/14, at 3-5.

Landron was found guilty of burglary, robbery, theft by unlawful taking, and criminal conspiracy following a bench trial was held on June 12, 2013. Landron was sentenced on September 19, 2013 to an aggregate sentence of eight to forty years' imprisonment, and he filed a post-sentence motion seeking to modify his sentence on September 29, 2013. The trial court denied the motion to modify sentence on October 2, 2013. Landron filed the instant timely appeal on October 17, 2013. However, on December 20, 2013, Landron filed a post-sentence motion seeking a new trial based upon newly discovered evidence. This second post-sentence motion was denied on December 23, 2013.

On appeal, Landron raises several issues for our review. Landron challenges the sufficiency of the evidence and the weight of the evidence to

support his conviction. Landron also challenges the sentence imposed, asserting that the sentence is excessive. Finally, Landron asserts that the trial court erred in denying his request for a post-sentence hearing based upon newly discovered evidence.

In his first issue, Landron challenges the sufficiency of the evidence to support his conviction. Our review of the sufficiency of the evidence involves determining

> whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008) (citation omitted). Additionally, "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id.*

Upon inspection, Landron offers no argument to support a challenge to the sufficiency of the evidence, since his only contention is that the Commonwealth relied on Mojica's testimony and that she, as an accomplice, was not a credible witness. Arguments that the fact-finder should have discredited a witness's testimony go to the weight of the evidence, not the sufficiency of the evidence. *Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that jury should have believed defendant's version of the event rather than victim's goes to the weight, not the sufficiency of the evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa.

Super. 2003) (finding that review of sufficiency of evidence does not include assessing credibility of testimony; such a claim goes to weight of evidence).

Thus, Landron's sufficiency of the evidence claim is merely duplicative of his second issue on appeal, which challenges the weight of the evidence to support his conviction. Pennsylvania Rule of Criminal Procedure 607(A) provides:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
> (2) by written motion at any time before sentencing; or
> (3) in a post-sentence motion.

*Id.* Failure to raise a weight-of-the-evidence claim prior to appeal as required in Rule 607(A) will result in waiver of the issue, regardless of whether the appellant raises this issue on appeal or the trial court addresses the issue in its Rule 1925(a) opinion. ***Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009). Instantly, while Landron filed a timely post-sentence motion, the motion did not raise an identifiable challenge to the weight of the evidence, nor did Landron's post-sentence motion claiming newly discovered evidence raise such a claim. Therefore, Landron's challenge to the weight of the evidence supporting his conviction is waived.

In his third issue, Landron claims that the sentence imposed by the trial court is excessive. Challenges to the excessiveness of a sentence raise questions regarding the discretionary aspects of sentencing, rather than the

legality of the sentence. ***Commonwealth v. Pennington***, 751 A.2d 212 (Pa. Super. 2000). Where the discretionary aspects of a sentence are challenged, an appeal is not guaranteed as of right. Rather,

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa. Super. 2011) (citation omitted).

Here, Landron asserts that the trial court failed to adequately consider his circumstances when imposing his sentence. In particular, Landron argues that the trial court did not properly consider his minimal prior record and the fact that he has several children. However, this argument challenges the weight the trial judge assigned to particular factors that would affect sentencing. Typically, a claim that the sentencing court failed to give adequate weight to a specific sentencing factor does not raise a substantial question. ***See Commonwealth v. Berry***, 785 A.2d 994 (Pa. Super. 2001). Thus, Landron fails to meet the requirements set forth in ***Ferguson***, ***supra***. Accordingly, this issue does not raise a substantial question, and we find no basis to disturb the trial court's judgment of sentence.

Finally, Landron asserts the trial court erred in denying his post-sentence motion for a new trial based upon a claim of after-discovered evidence. In order to succeed on a newly discovered evidence claim, the petitioner has the burden to prove that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012).

Instantly, Landron merely continues to attack Mojica's credibility under the guise of "newly discovered evidence." Thus, Landron cannot satisfy his burden of demonstrating that he is entitled to a new trial.

Moreover, due to the timing of Landron's post-sentence motion seeking a new trial, the trial court lacked jurisdiction to rule on the motion. Without an obvious mistake on the face of the order in question, the trial court loses jurisdiction to modify an order thirty days after its entry, or upon the filing of an appeal. Here, Landron filed his post-sentence motion seeking a new trial on December 20, 2013. This was well past 30 days beyond the date Landron was sentenced, September 19, 2013, and while the case was pending on appeal. Accordingly, the trial court did not err by not addressing the merits of Landron's post-sentence motion seeking a new trial.

Based on the foregoing, we find that the trial court did not err in finding Landron guilty, and we find no reason to disturb the judgment of sentence.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2014